IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| JAMES GLENN HARRISON,<br><br>                   Plaintiff,<br><br>vs.<br><br>ANTHONY J. PRINCIPI, SECRETARY OF VETERANS AFFAIRS,<br><br>                   Defendant. | Civil Action No. 3:03-1398-MBS-JRM<br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

       Plaintiff, James Glenn Harrison ("Harrison"), filed this action on April 21, 2003. He is a retired employee of the Department of Veterans Affairs ("DVA"). Harrison alleges claims under the Equal Pay Act, 29 U.S.C. §§ 206(d) and 215(a)(3) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] Defendant is Anthony J. Principi, the Secretary of the DVA (the "Secretary"). The Secretary filed a motion for summary judgment on September 15, 2004. Harrison filed a memorandum in opposition to summary judgment on February 22, 2005. On July 1, 2005, the Secretary filed a reply memorandum. Harrison filed a response and memorandum in opposition to summary judgment on August 17, 2005.[2]

---

     [1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

     [2]On January 3, 2005, Harrison filed a motion to strike (Doc. 21) the Secretary's designation of an expert witness. The undersigned has not addressed this motion, as it appears to be a trial issue.

## SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 35 5, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there

is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Harrison served as a Vocational Rehabilitation and Employment ("VR&E") Officer or, as that position was earlier titled, a Vocational Rehabilitation and Counseling ("VR&C") Officer, in the Columbia, South Carolina Regional Office of the DVA for over thirty-one years.

2. Carl Hawkins ("Hawkins") is the Director of the Columbia Regional Office and was Harrison's supervisor. Ursula Henderson ("Henderson") was the Assistant Director of the Columbia Regional Office.

3.   The Columbia Regional Office was ranked as one of the most productive offices, frequently ranked in the top five VR&C offices nationwide. See Plaintiff's Ex. B.[3]

4.   In May 1996, the DVA upgraded a female VR&C Officer's position in the Los Angeles, California office from paygrade GS-13 to GS-14. In May 1997, the DVA upgraded the position of a female VR&C Officer in Chicago, Illinois from GS-13 to GS-14. Plaintiff's Ex. D, 1 and 6.

5.   On January 5, 1998, Harrison forwarded a request to the Director of the Columbia Regional Office to initiate steps to reclassify the Columbia VR&C Officer position from GS-13 to GS-14 due to increases in the level of his responsibility, workload, number of employees, and number of contractors and in light of the past and pending reclassifications. Plaintiff's Ex. C, 1-2. Plaintiff states he was informed that the decision was up to the VR&C Service.

6.   In January 1998, the Director of the Southern Area requested approval to reclassify a female VR&C Officer's position in Atlanta, Georgia from GS-13 to GS-14. The position was upgraded by the DVA in February 1998. Plaintiff's Ex. C, 7; D, 1 and 8.

7.   On October 26, 1998, Harrison sent an e-mail message to George Pannebaker, VR&E Service in the VA Central Office, requesting a classification review (desk audit) of his VR&C Officer position from GS-13 to GS-14. Plaintiff's Ex. C., 3-4. Harrison did not send a copy of the e-mail to his supervisors in the Columbia office. He claims, however,

---

[3]Exhibits submitted by Plaintiff with his August 17, 2005 response to Defendant's reply are referenced as "Plaintiff's Ex. [Letter], [Page Number]".

       that he informed Hawkins of his request for classification review and that Hawkins responded negatively and questioned why he (Hawkins) had not been made part of the process.

8. On August 1, 1999, the GS classifications of male VR&C Officers in Winston-Salem, North Carolina and Nashville, Tennessee were upgraded from GS-13 to GS-14. By January 2001, sixteen males and four females held GS-14 VR&C Officer positions throughout the country. Defendant's Motion for Summary Judgment, Ex 3.

9. On August 4, 1999, the VA's Deputy Undersecretary for Operations sent a letter to the VA Regional Offices providing guidance on the agency's nationwide reclassification of VR&C Officer positions. Plaintiff's Ex. C, 5-15.

10. On September 9, 1999, Harrison sent an e-mail to Henderson requesting a classification review. Harrison stated that he thought that the workload and some other factors were met because the Columbia Regional Office workload had been at a level of 2.6 percent as of August 1996 and 2.9 percent as of August 1999. Plaintiff's Ex. C, 16.

11. On September 30, 1999, Hawkins informed Harrison that he was requesting additional information from the VR&C Service. Hawkins also stated that workload was only one of several factors to be considered. Plaintiff's Ex. C, 17.

12. On December 7, 1999, Hawkins and Henderson sent an e-mail to Plaintiff requesting a meeting regarding Harrison's previous request to Human Resources for a desk audit. Plaintiff's Ex. C, 20.

13. Harrison claims that Hawkins demanded to know why Harrison had sought the desk audit, informed Harrison that a desk audit would not be performed at Harrison's request, and stated that a request for a management-level promotion had to be recommended or approved by management. He also claims that Hawkins told him that there were problems with his performance.

14. In a memorandum addressed to the Associate Deputy Undersecretary for Operations (East) dated December 23, 1999, Hawkins requested that Harrison be promoted to the GS-14 level. Defendant's Motion for Summary Judgment, Ex. 2; Plaintiff's Ex. C, 23.

15. On January 6, 2000, Hawkins sent a memorandum to the Director of the VA's Human Resources Center in Jackson, Mississippi with a new position description of Harrison's job and a request for approval of the classification of the position to GS-14. Plaintiff's Ex. C, 24-32.

16. On January 31, 2000, Harrison sent an e-mail to Daryl Smith ("Smith") in the Jackson office requesting that he be paid retroactive to July 29, 1999 at the GS-14 level. Plaintiff's Ex. C, 34.

17. On April 28, 2000, Harrison wrote to Human Resources inquiring about his reclassification request. Plaintiff's Ex. C, 35.

18. Harrison claims that thereafter Hawkins's attitude toward him became "increasingly and deliberately provocative, accusatory and attacking."

19. Harrison's position was reclassified as GS-14 effective June 4, 2000. Plaintiff's Ex. C, 37.

20. On September 11, 2000, Harrison sent an e-mail to Smith requesting retroactive pay and notifying him of his intent to file an EEO claim if there was no response to his request within thirty days. Plaintiff's Ex. C, 38.

21. On September 15, 2000, Henderson issued Plaintiff a disciplinary admonishment (concerning his preparation and delegation of responsibilities for a "white paper" in response to a Freedom of Information/Privacy Act request) which was placed in Harrison's personnel file. Plaintiff's Ex. F, 11-12. Harrison sought administrative review of this decision. The Final Agency Decision was issued on March 13, 2003, in which it was determined that the disciplinary admonishment was improper, but was not discriminatory and was not based on Harrison's sex, age, or protected activity. Defendant's Reply, Ex. 1.

22. Harrison complained to an EEO counselor about unequal pay and retaliation on September 19, 2000. Plaintiff's Ex. G, 1.

23. On October 4, 2000, an employee on Harrison's staff provided a written complaint against Harrison for harassing treatment of Columbia Regional Office employees.

24. On October 13, 2000, Henderson scheduled Harrison for a course on "Self-Discipline & Emotional Control."

25. Harrison suffered a panic attack while at work on October 27, 2000.

26. Harrison filed a formal EEO Complaint on November 1, 2000. He claimed sex discrimination for unequal pay, age discrimination because of length of service and seniority, and disparate treatment. He appears to have amended his complaint to include

a claim for failure to provide incentive awards in fiscal years 1999 and 2000 and a claim that he was forced into premature retirement. Plaintiff's Ex. G, 3-5 and 8.

27. On November 1, 2000, Dr. Robert Amory, Harrison's cardiologist, recommended that Harrison stay out of work for at least the next sixty days. Plaintiff's Ex. E, 7. Plaintiff was allowed to do so.

28. In a letter dated December 12, 2000, Hawkins was notified of Harrison's complaint of discrimination.

29. On January 4, 2001, Dr. Amory wrote a letter to Hawkins in which he opined that Harrison was capable of returning to work with a limitation of four-hour days. Plaintiff's Ex. E, 13.

30. On January 23, 2001, Henderson wrote a letter to Harrison requesting medical information concerning Harrison's request for reduced work hours. Plaintiff's Ex. E, 14-27.

31. In a letter to Harrison dated January 31, 2001, Dr. Henry Martin, Harrison's family physician, outlined Harrison's impairments and opined that "[a]t the present time this patient needs to have the lowest possible work and home stress, but particularly work stress, possible for the best possible clinical outcome from his coronary disease, diabetes and of course, his depression." Plaintiff's Ex. E, 28-29.

32. On February 7, 2001, Henderson sent an e-mail to Harrison stating that no medical information had been provided and Harrison was expected to report to work full-time effective the next day. Plaintiff's Ex. E, 30.

33. On February 14, 2001, Hawkins received a letter from Dr. Amory (dated February 8, 2001). Dr. Amory described Harrison's medical and psychological impairments and stated that he was in no position to delineate Harrison's exact abilities from a medical statement. Dr. Amory wrote that "[i]t is completely obvious that [Harrison] needs to do something to reduce his level of stress and anxiety in his work and daily activities" and "[i]f possible, Mr. Harrison and I would greatly appreciate amelioration of his stress in order to enable him to return to his premorbid functional level." Plaintiff's Ex. E, 31-32.

34. Harrison retired effective February 28, 2001.

35. Harrison received the Final Agency Decision on March 20, 2003.

## DISCUSSION

Plaintiff alleges violations of the Equal Pay Act and Title VII for a delay in paying him at the GS-14 level. He also alleges claims for retaliation.

### A. Equal Pay Act

Harrison alleges that his rights under the Equal Pay Act were violated because he was paid less, prior to his GS-14 reclassification, than female VR&C officers in Los Angeles, Chicago, and Atlanta. The Secretary argues that Harrison fails to establish his prima facie case under the Equal Pay Act.[4]

---

[4]The Secretary, in his motion for summary judgment, argues that this Court lacks jurisdiction over Harrison's claims because he seeks retroactive pay which is a challenge to an agency classification. In United States v. Testan, 424 U.S. 392 (1976), the Supreme Court concluded that neither the Classification Act nor the Back Pay Act creates a substantive right in an employee's right to back pay for a period of wrongful classification. Testan, 424 U.S. at 407. In his reply, the Secretary does not dispute that this court has jurisdiction over mixed cases (a
(continued…)

A plaintiff bringing a claim under the Equal Pay Act must first establish a prima facie case of wage discrimination. Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). To establish a prima facie case under the Equal Pay Act, a plaintiff must show that (1) an employer is paying different wages to employees, (2) of the opposite sex, (3) "for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); see Brinkley v. Harbour Rec. Club, 180 F.3d 598, 613 (4th Cir. 1999); Houck v. Virginia Polytechnic Inst., 10 F.3d 204, 206 (4th Cir. 1993). A plaintiff must select a specific comparator, Strag v. Board of Trustees, 55 F.3d 943, 950 (4th Cir. 1995), looking to see if they share a common core of tasks in their jobs. Hassman v. Valley Motors, Inc., 790 F. Supp. 564, 567 (D.Md. 1992). If the jobs to be compared have a common core of tasks, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility. Cherrey v. Thompson Steele Co., Inc., 805 F. Supp. 1257, 1262 (D.Md. 1992). Once the plaintiff makes a prima facie showing, the burdens of production and persuasion shift to the defendant. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 344 (4th Cir. 1994). The defendant must then prove by a preponderance of the evidence that the wage differential between the male and female employees falls within one of four

---

[4](…continued)
"mixed case" complaint "is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board" 29 C.F.R. § 1614.302(a)(1)), but continues to argue that this Court does not have jurisdiction over challenges to the classification process. To the extent that Harrison attempts to assert a claim that he should be reclassified for three years, this Court may lack jurisdiction over his claims. Harrison, however, contends that he is not asserting a classification challenge.

statutory affirmative defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

  (1)  Different Wages

    The Secretary argues that Harrison fails to establish his prima facie case because he has not identified a particular female comparator who received more pay than he did for similar work. The Secretary correctly argues that the mere fact that these females had a higher grade (GS-14) than Harrison (GS-13) does not mean that the female employees had a higher pay rate because the pay ranges for different grades, including GS-13 and GS-14, may overlap. See Defendant's Reply Ex. 2 (Office of Personnel Management Salary Table). The parties have provided information concerning Harrison's salary (see Administrative Record), but have not provided information concerning the salaries of the Los Angeles, Chicago, and Atlanta VR&C Officers. In their "Agency Response to Complainant's Interrogatories," however, the DVA provided that "Harrison received less compensation than other VR&C officers who were recently upgraded because he had not met the criteria for promotion…" Plaintiff's Ex. I, 1. Thus, there is a genuine issue of material fact as to whether Harrison received a lower rate of pay than the Los Angeles, Chicago, and Atlanta female VR&C Officers.

  (2)  Substantially Equal Work

    Harrison argues that he has established this element of his prima facie case because his position was eventually reclassified at the GS-14 level. The Secretary argues that Harrison's work was not substantially the same as his comparators because the Los Angeles,

Chicago, and Atlanta positions had program complexities not present in the Columbia position. In particular, the Secretary notes that the Los Angeles VR&C Officer had twenty-one staff members and three out-based sites with two subordinate supervisors; the Atlanta VR&C Officer had twenty-one staff members and four out-based offices; and the Chicago VR&C Officer had seventeen staff, while Columbia had only twelve staff members. There is a genuine issue of material fact as to whether Harrison's position constituted substantially equal work to that of the female VR&C officers in Los Angeles, Chicago, and Atlanta as Harrison's position was eventually upgraded. Additionally, Harrison's Position Evaluation Statement (January 2000) stated that the last position description was in April 1987 and since that time the "level of responsibility for this position has increased significantly over the years as has the workload and number of employees in the division." Plaintiff's Ex. A, 11. The Position Evaluation Statement for the Columbia Regional Office shows that the Columbia VR&C Officer position was assigned more points overall and more points for supervisory and managerial authority than the Position Evaluation Statement for the Atlanta VR&C Officer position. Plaintiff's Ex. A, 11 and D, 9.[5]

    (3)  <u>Affirmative Defense</u>

      The Secretary argues that even if Harrison can establish his prima facie case, it offers the defense of a bona fide merit system. Reply at 7. However, no further details have been provided by the Secretary to make any meaningful determination concerning this defense.

---

[5]Defendant appears to argue that the Position Evaluation Statement for the Columbia position assigned too many points for supervisory and managerial authority.

B.   Title VII

Harrison alleges that his rights under Title VII were violated because he was paid less than similarly-situated female VR&C officers prior to his reclassification to GS-14. The Secretary argues that Harrison fails to establish a prima facie case because he fails to establish that he was paid less than similarly-situated female employees.[6]

In order to make out a prima facie case of wage discrimination under Title VII, a plaintiff must show that (1) he or she is a member of a protected class and (2) the job he or she occupied was similar to higher paying jobs occupied by employees outside the protected class. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994). If a plaintiff establishes a prima facie case under Title VII, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).[7] If a defendant provides a legitimate, nondiscriminatory reason for the pay disparity, "the burden of persuasion remains on the plaintiff to demonstrate that the proffered explanation is pretextual and that the defendant was actually motivated by discriminatory intent." Id. at 344; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

---

[6] Harrison may also be attempting to claim that Hawkins and Henderson delayed his reclassification based on his sex in violation of Title VII. Any such claim fails, however, because Henderson and Hawkins were not involved in the Atlanta, Chicago, or Los Angeles reclassifications of VR&C Officers.

[7] Discriminatory intent is not an element of an EPA claim. Brinkley-Obu, 36 F.3d at 344, n. 17. Given these differences, "a plaintiff may succeed on an Equal Pay Act claim and fail to establish a Title VII claim." Id.

As discussed above, there are genuine issues of material fact as to whether Plaintiff was paid at a lower rate than similarly-situated female VR&C Officers. Further, the Secretary has provided insufficient information to determine whether there was a legitimate, non-discriminatory reason (such as a merit-based system) for his decision.

C.     Retaliation

Harrison asserts claims of retaliation under both the Equal Pay Act and Title VII. The Secretary argues that Harrison fails to establish a prima facie case of retaliation.

To establish a prima facie case of retaliation under Title VII or the Equal Pay Act, it must be demonstrated that:

1)     the employee engaged in protected activity;[8]

2)     the employer took some adverse employment action against the employee; and

3)     a causal connection existed between the protected activity and the adverse action.

---

[8]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985). It is unclear, however, whether informal complaints, such as complaints to a supervisor, constitute protected activity under the Equal Pay Act. See EEOC v. White & Son Enters., 881 F.2d 1006, 1011-12 (11th Cir.1989) (finding that employees' informal complaints concerning unequal pay, which did not involve citation of the Equal Pay Act or the FLSA, constituted protected activity); see also Debrecht v. Osceola County, 243 F.Supp.2d 1364, 1374 (M.D.Fla.2003) (finding that employees' informal complaints to employer concerning unpaid overtime constituted protected activity under the FLSA); but see Lambert v. Genesee Hosp., 10 F.3d 46 (2d Cir.1993)(finding the FLSA's language unambiguous and determining that an employee who had allegedly been fired for filing an informal workplace complaint did not have a cause of action), cert. denied, 511 U.S. 1052 (1994),

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII); and Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)(Title VII and Equal Pay Act). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

   (1) <u>Adverse Employment Action</u>

    Harrison alleges that he was subjected to the adverse employment action of constructive discharge.[9] The Secretary contends that Harrison fails to show that he was

---

[9]In his opposition memorandum (at 19-20), Harrison discusses a number of allegedly adverse actions. It is unclear whether he is attempting to assert that each of these is an adverse employment action constituting retaliation or if he is citing these actions in support of his claim that he subjected to the adverse employment action of constructive discharge. In his complaint, however, he appears to assert the adverse employment action of constructive discharge.

  The Fourth Circuit, in Von Gunten v. Maryland, 243 F.3d 858 (4th Cir. 2001), clarified what an "adverse employment action" is for purposes of a Title VII retaliation claim. Although "ultimate employment actions" are adverse employment actions, a Title VII retaliation claim does not require an ultimate employment action, but does require an action that alters the terms, conditions, or benefits of employment. Von Gunten, 243 F.3d at 865-866. An objective test of "adversity" applies, and a plaintiff's subjective feelings about the employment action is a necessary, but not a sufficient, evidentiary showing to withstand summary judgment. See Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir.1988). Individually, actions such as Henderson's admonishment of Harrison concerning the white paper; Hawkins allegedly accusatory and attacking attitude to Plaintiff's after the September 30, 1999 and May 9, 2000 meetings; allegedly false criticisms of Harrison's performance, and allegedly unreasonable work demands

(continued…)

constructively discharged because he has not shown that there was any deliberate action taken to make him resign or leave.

An employee is entitled to relief under Title VII for constructive discharge if an employer takes "deliberate" action to make the employee's working conditions "intolerable" in an effort to force the employee to resign. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995); Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1132 (4th Cir. 1995); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986). Deliberateness exists when the actions of the employer were "intended by the employer as an effort to force the employee to quit." Martin, 48 F.3d at 1354. Such intent can be inferred from actual or circumstantial evidence. See Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir.1984), cert. denied, 470 U.S. 1028 (1985). Deliberateness is also shown if company personnel know of the untenable conditions, and take no steps to remedy the situation. Id. "Intolerable" working conditions are assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. Burns v. AAF-McQuay, Inc., 96 F.3d 728, 733 (4th Cir. 1996), cert. denied, 520 U.S. 1116 (1997); EEOC v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992).

There is a genuine issue of material fact as to whether DVA employees took deliberate steps to make Harrison's working conditions intolerable in retaliation for his EEO complaints. In the light most favorable to Harrison, he was admonished concerning the white paper and

---

[9](…continued)
in spite of health problems and the need for additional staff are not "adverse employment actions" as they did not alter the terms, conditions, or benefits of Harrison's employment.

received performance criticisms shortly after he complained of alleged equal pay violations and his intention to pursue EEO remedies. Henderson demanded that Harrison return to work full-time after receiving letters from physicians which, although somewhat cryptic in their descriptions of his restrictions, discussed his medical conditions.[10]

        (2)     Causal Connection

The Secretary argues that there is no causal connection because too much time passed between the protected activity (Harrison announcing in September 2000 that he intended to file an EEO complaint) and the alleged adverse employment action (constructive discharge) in February 2001.

In Garrett v. Lujan, 799 F. Supp. 198 (D.D.C.1992), the court observed that "[w]hile a causal nexus is inferred when the adverse employment action occurs shortly after participation in a protected activity," such inference is not appropriate when the time interval is too great. Id. at 202 (concluding that the passage of nearly a year precluded an inference of causal connection); see Parrott v. Cheney, 748 F. Supp. 312 (D.Md.1989) (even the passage of as little as five months

---

[10]Harrison appears to claim that the Secretary failed to accommodate his medical problems. He has not alleged a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Further, an accommodation request is not reasonable if it requires an employer to fundamentally alter the operation of its business and constitutes an undue hardship. See 42 U.S.C. § 12112(b)(5); 29 C.F.R. § 1630.2(p); see also Buckles v. First Data Res., Inc., 176 F.3d 1098, 1101 (8th Cir.1999) (stating that "[u]fettered ability to leave work at any time is certainly not a reasonable accommodation here."); Myers v. Hose, 50 F.3d 278, 282-83 (4th Cir.1995) (Wilkinson, J.) (reasonable accommodation provisions of the ADA do not require employers to "wait indefinitely," providing extended leave, while an employee's health improves); Carr v. Reno, 23 F.3d 525, 531 (D.C.Cir.1994) ("[T]o require an employer to accept an open-ended 'work when able' schedule for a time-sensitive job would stretch 'reasonable accommodation' to absurd proportions….").

between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), aff'd per curiam, 914 F.2d 248 (4th Cir.1990). Although Harrison did not resign until February 2001, it is unclear whether the temporal proximity is too long, as alleged actions that he claims lead to a constructive discharge, including admonishment (September 2000), criticism in his performance appraisal (September 2000), and requests for medical documentation (January 2001), occurred earlier.

## CONCLUSION

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 18) be denied.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 31, 2005
Columbia, South Carolina