IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

James Glenn Harrison,                )
                                     )     C/A No. 3:03-1398-MBS
                    Plaintiff,       )
                                     )
        vs.                          )
                                     )     **O P I N I O N and O R D E R**
Anthony J. Principi, Secretary       )
of Veterans Affairs,                 )
                                     )
                    Defendant.       )
_____)

Plaintiff James Glenn Harrison is a former employee of the Department of Veterans Affairs ("VA"). He filed a complaint on April 21, 2003 alleging that Defendant violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.*, as amended; and the Equal Pay Act of 1963, 29 U.S.C. §§ 203 (e)(2) and 206 (d) ("Equal Pay Act"). Plaintiff contends that he was unlawfully paid less than female employees at the Department of Veterans Affairs serving in his identical vocational capacity. Plaintiff also raises two claims that his immediate supervisors retaliated against him for pursuing legal remedies to address the alleged discriminatory wage differences.[1]

This matter is before the court on Plaintiff's motion for partial summary judgment filed on February 14, 2006. Plaintiff seeks summary judgment on his first Equal Pay Act claim. See

_____

[1] Plaintiff's complaint initially pleaded four causes of action. Plaintiff's first cause of action alleges a violation of the Equal Pay Act and avers that Plaintiff was paid less than similarly situated females. Plaintiff's second cause of action alleges retaliation against Plaintiff in violation of the Equal Pay Act. Plaintiff's fourth cause of action alleges retaliation in violation of Title VII. Plaintiff has abandoned his third cause of action alleging direct discrimination in violation of Title VII. Transcript of March 23 Hearing, 7. Accordingly, the court dismisses, as moot, Plaintiff's third cause of action.

Complaint, 8. On March 6, 2006, Defendant filed a response in opposition to Plaintiff's motion for partial summary judgment. On March 16, 2006, Plaintiff filed a reply memorandum. The court held a hearing on the motion on March 23, 2006 where it granted partial summary judgment in favor of Plaintiff. This order sets forth the basis for the court's March 23, 2006 ruling.

Following the hearing, Defendant filed a "Supplemental Response to Secretary's Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment" on March 31, 2006. ECF Entry 83. Plaintiff responded to this filing on April 5, 2006 by moving the court to strike the supplemental response and the attached declaration. Plaintiff's Motion to Strike and for Sanctions, 2 (ECF Entry 87). Plaintiff also asks that the court impose sanctions "pursuant to either Fed. R. Civ. P. 56(g) or Fed. R. Civ. P. 37(c)(1)." Id. at 6. After receiving an extension of time to file a response, Defendant responded on May 4, 2006. Plaintiff filed a reply on May 12, 2006. Defendant filed a sur reply on May 19, 2006.

Also before the court is Defendant's Motion to Strike Plaintiff's Jury Trial Demand filed on January 6, 2006 (ECF Entry 58) to which Plaintiff responded on January 24, 2006. For the reasons stated in this order, Plaintiff's motion to strike is granted and Defendant's motion to strike is also granted.

## I. FACTS

Plaintiff was employed for thirty-one years as a Vocational Rehabilitation and Counseling ("VR&C") Officer[2] at the VA in Columbia, South Carolina. During the time period in question,

---

[2]

Plaintiff's position at the VA is referenced as a Vocational Rehabilitation and Employment Officer ("VR&E" Officer) in some filings. See Defendant's Response to Motion for Partial Summary Judgment, 1. The court will reference the position as a "VR&C" Officer and notes

2

Plaintiff was classified at the GS-13 level while his identified female comparators were classified at the GS-14 level.

Plaintiff alleges[3] that, beginning in at least 1998, he asked VA administrators in Columbia to process his request to reclassify his pay grade to the same level as the female VR&C Officers. Complaint, 2. During the time Plaintiff's request was pending, a female VR&C Officer in Atlanta, Georgia asked for, and received, an upgrade from GS-13 to GS-14. Id. at 3. Having heard nothing regarding his request, on October 26, 1998 Plaintiff sent an email request for a review of his pay grade and position to VA officials in Washington, D.C. Plaintiff contends he orally informed his immediate supervisor in Columbia of his request for review. Id. Plaintiff claims his immediate supervisor in Columbia "responded negatively and asked why [the supervisor] had not been made a part of the process." Id. Plaintiff avers that, after learning of the request for a higher wage, his supervisor informed him "[that he] was not going to do anything about Plaintiff's requests," questioned Plaintiff's performance, and refused to grant Plaintiff an "incentive award" for 1999. Id. at 4. Plaintiff later requested back pay retroactive to the dates that his female counterparts in other VA offices received wage increases. Id. at 5.

---

that the alternative titles have no effect on the case. See Report and Recommendation, 3.

[3]

Plaintiff has moved for summary judgment on an Equal Pay Act claim. As such, the court must construe the facts in the light most favorable to Defendant, the non-moving party. However, the court notes that Defendant's response to Plaintiff's motion for partial summary judgment failed to articulate basic background facts of the case and instead recited only a factual basis for the failure to upgrade Plaintiff from GS-13 to GS-14 status. See Response to Plaintiff's Motion for Partial Summary Judgment, 2-7 ("Facts on behalf of Secretary"). Accordingly, the court is forced to utilize a portion of Plaintiff's factual allegations to establish the background facts of the case. The court includes the basic facts as detailed by Defendant and notes that it has construed all disputed facts in Defendant's favor.

Defendant admitted at oral argument that Plaintiff was "always asking for a raise" but disputes when, exactly, Plaintiff formally requested an upgrade. Transcript, 50. Defendant also disputes that Plaintiff was performing "equal work" as his female comparators in Atlanta, Chicago, Illinois, and Los Angeles, California. Response to Motion for Partial Summary Judgment, 10. Defendant's recitation of the facts indicates that Plaintiff's GS level at the time he first sought an upgrade was based on a series of three "criteria" that purportedly established Plaintiff was not entitled to an upgrade to GS-14. Id. at 6. Specifically, Defendant contends that Plaintiff, unlike his female comparators, failed to satisfy the requisite number of criteria enumerated in a May 12, 1997 memorandum and thus did not merit an upgrade to GS-14 status. Id. Defendant contends that these criteria were revised on August 4, 1999. Id. at 6. Defendant states that Plaintiff was then entitled to an upgrade to the GS-14 level as a result of this revision. Id. Defendant contends that Plaintiff's supervisor processed Plaintiff's request for an upgrade soon thereafter. Id. As a result, Plaintiff was formally approved for an upgrade to GS-14 level by the VA on June 2, 2000. Id. at 7.

## II. LAW/ANALYSIS

### A. Plaintiff's Motion for Partial Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

4

as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary

judgment should be granted in those cases where it is perfectly clear that there remains no genuine

dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the

law. McKinney v. Bd. of Trustees of Mayland Community College, 955 F.2d 924, 928 (4th Cir.

1992). In deciding a motion for summary judgment, "the judge's function is not [herself] to weigh

the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." Anderson, 477 U.S. at 249.

      The party moving for summary judgment has the burden of demonstrating that there is an

absence of sufficient evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477

U.S. 317, 325 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "When a motion for

summary judgment is made and supported . . . , an adverse party may not rest upon the mere

allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits

or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

issue for trial." Fed. R. Civ. P. 56(e). Thus, once the moving party meets its burden, the nonmoving

party must establish that there is a genuine factual dispute about a material fact. Anderson, 477 U.S.

at 248; Celotex Corp., 477 U.S. at 324.

      For the evidence to present a genuine issue of material fact, it must be "such that a

reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. An

issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit

under the governing substantive law. Id. "[A] complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex

Corp., 477 U.S. at 323. Production of a mere scintilla of evidence in support of an essential element

will not prevent the granting of a properly supported motion for summary judgment.  Anderson, 477 U.S. at 251.

Plaintiff avers that summary judgment is appropriate as to his first Equal Pay Act claim because he has made a prima facie case that Defendant has failed to rebut with an affirmative defense.  The court agrees.

To establish a prima facie case under the Equal Pay Act, Plaintiff must prove: (1) that his employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions.  See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974).

As to the first element,  Plaintiff identified three female VR&C officers in Los Angeles, Chicago, and Atlanta who were compensated at the GS-14 level for allegedly substantially similar work while Plaintiff was compensated at the GS-13 level.  Motion for Partial Summary Judgment, 14.  Defendant argues that "the record is devoid of any evidence as to their salaries."  Response to Motion, 12.[4]  However, Defendant's repeated admissions in the lengthy record in this case belie this

---

[4]

Defendant reiterates the position that Plaintiff, though admittedly classified at a lower GS level than his identified female comparator in Atlanta, actually received a higher salary than the Atlanta comparator.  Response to Plaintiff's Motion to Strike and for Sanctions, 4.  Defendant attaches documentation allegedly supporting the contention that the Atlanta VR&C officer identified as a comparator by Plaintiff was actually paid less than Plaintiff.  Id. at Ex. 1.  The court notes that this argument and the introduction of exhibits in support is untimely.  See Local Rule 7.04 ("All motions made other than in a hearing or trial or to compel discovery shall be timely filed with an accompanying supporting memorandum which shall be filed and made part of the public record"); Local Rule 7.06 ("Any memorandum or response of an opposing party must be filed with the Clerk of Court within fifteen (15) days of the service of the motion unless the Court imposes a different deadline . . . .").  Moreover, the court notes that a challenge to the pay differential between Plaintiff and his identified Atlanta comparator does not affect the admitted disparity between Plaintiff and the Chicago and Los Angeles comparators.  Therefore, this argument is without merit.

The court also notes Plaintiff's allegation that  he sought, during discovery, documentation allegedly

contention.[5]  See Answer to Complaint, 4  ¶27 (admitting that Plaintiff's position was reclassified

at level GS-14 on June 4, 2000); Defendant's Response to Request for Admission, 1-3 (attached as

Exhibit 5 to Plaintiff's Motion for Partial Summary Judgment) (admitting that the Los Angeles,

Chicago, and Atlanta VR&C Officers identified as comparators by Plaintiff were upgraded from GS-

13 to GS-14 at least two years prior to Plaintiff).  Further, the record reflects that Defendant has

repeatedly acknowledged that Plaintiff actually received less pay than his female comparators.

Plaintiff specifically inquired of Defendant, "[i]f you contend Defendant did *not* pay Plaintiff less

than other VR&C/VR&E Officers who are female, as alleged in the Complaint, please state your

---

in the possession and control of Defendant indicating the salary and step of Plaintiff's identified
comparators.  See Plaintiff's Reply to Defendant's Response to Motion for Partial Summary
Judgment, 9; Plaintiff's Reply to Defendant's Response to Motion to Strike and for Sanctions, 11
n.14.  Defendant responds by claiming that "[Plaintiff] never asked for [the evidence regarding pay
grade and step]."  Defendant's Surreply to Plaintiff's Motion to Strike and for Sanctions, 10.
Pursuant to Federal Rule of Civil Procedure 26(e)(2), "[a] party is under a duty seasonably to amend
a prior response to an interrogatory, request for production, or request for admission if the party
learns that the response is in some material respect incomplete or incorrect."  Fed. R. Civ. P.
26(e)(2).  The court need not resolve this apparent discovery dispute at this time.  However, it notes
that if Defendant failed to turn over discoverable documentation requested by Plaintiff, Defendant
cannot use an absence of such documentation from the record to support its position.

[5]

Defendant's recent Response to Plaintiff's Motion to Strike and for Sanctions indicates that Plaintiff
has identified only two comparators, one in Atlanta, Georgia and one in Nashville, Tennessee.
Response to Plaintiff's Motion to Strike and for Sanctions, 4 ("In his brief and before the Court at
the March 23, 2006 hearing, [Plaintiff] identified two individuals he contends were "comparators"
. . . a female [VR&C officer] in the Atlanta office and . . . a male [VR&C officer] in the Nashville
office.")  To the contrary, Plaintiff has consistently held his comparators to be female VR&C officers
in Los Angeles, Atlanta, and Chicago.  See Complaint, 5; Reply Memorandum to Defendant's
Motion for Summary Judgment, 6; Plaintiff's Motion for Partial Summary Judgment, 2.  The record
reflects that Defendant first introduced data concerning the Nashville VR&C officer.  See Response
to Plaintiff's Motion for Partial Summary Judgment, Ex. 3; Transcript, 49.  Further, any discussion
concerning the Nashville VR&C officer merely details the upgrade process and counters
Defendant's argument that Plaintiff did not perform equal work to female VR&C officers in Atlanta,
Los Angeles, and Chicago.  See Transcript, 49-51.  Therefore, this filing has no effect on the court's
order granting partial summary judgment to Plaintiff on his first Equal Pay Act claim.

reason for that contention." Defendant's Response to Interrogatories, 4 (attached as Exhibit 6 to

Plaintiff's Motion for Partial Summary Judgment) (emphasis in original). In response, Defendant

stated:

> Mr. Harrison was paid based on his grade and step in the general pay schedule. Mr.
> Harrison's position was properly classified as determined by VR&C Service in VA Central
> Office after national reviews were completed in 1992 and 1996. Higher graded employees
> or same graded employees who were at a higher step, would have been paid more, regardless
> of their sex. I feel quite sure that some people who were females made more money but I
> am also sure that some males also made more because of their higher grade or step. Salary
> was not based on the sex of the individual.

Id.

The court also notes that Defendant's counsel essentially abandoned any argument that

Plaintiff was paid more or the same as his female comparators when specifically queried on the

subject at the March 23, 2006 hearing. The record reveals the following exchange:

> The Court: Okay. [Ms.] Bailey, is it your position the plaintiff is being paid the same as his
> female peers, he was paid the same as they were back in 1998?
>
> Defense Counsel Ms. Bailey: It's my -- well, *I don't know what the females are paid*, but I
> do know that he was not doing their work. . . .
>
> The Court: But your position is he wasn't doing their work, but you don't know whether or
> not he was paid the same or less than they were?
>
> Defense Counsel: Correct. . . .

Transcript, 51 (emphasis added). The court finds that Plaintiff has established that he has satisfied

the first prong of his prima facie case.[6]

---

[6]

The court withholds a determination on the extent and total sum of the difference between the
Plaintiff and his identified comparators until the record in this case is further developed at trial on
Plaintiff's Title VII claims and additional Equal Pay Act claim or at a subsequent hearing.

Turning to the second and third requirements of the prima facie case, Plaintiff contends that he performed substantially similar work under similar working conditions as his female comparators. Motion for Partial Summary Judgment, 14-15. "In enacting the EPA, Congress chose the word 'equal' over the word 'comparable' in order "to show that the jobs involved should be virtually identical, that is . . . very much alike or closely related to each other." Wheatley v. Wicomico County, 390 F.3d 328, 333 (4th Cir. 2004) (additional citations omitted).   Thus, "'[e]qual means substantially equal.' " Id. at 332 (citing Hodgson v. Fairmont Supply Co., 454 F.2d 490, 493 (4th Cir.1972)).  The touchstone of the equal work analysis is whether the work is "substantially equal." Hassman v. Valley Motors, Inc., 790 F. Supp. 564, 567 (D. Md. 1992).  If the jobs to be compared have a "common core" of tasks, i.e., significant portions of the two jobs are identical, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility.  Id.

According to Plaintiff, "the record establishes that the upgrade criteria used to evaluate the positions of each of the [female comparators] as well as of Plaintiff were identical – leading to the inescapable conclusion that the work of these individuals was substantially equal."  Motion for Partial Summary Judgment, 14.  In support, Plaintiff provides a "self-assessment" of his workload and responsibility that he completed in January 1998 to demonstrate that he warranted an upgrade to GS-14 status.  Administrative Record, 749-50.  Plaintiff also presents a series of "Management Briefing Highlights" reflecting that the Columbia office's workload was among the highest in the nation during the time period that Plaintiff sought his upgrade to GS-14 status.  See Administrative Record, 1174-76.  Plaintiff argues that a review of these "Management Briefing Highlights" (also referenced as "Quarterly Reports") reveals that the nature of his job did not change from the time

9

he requested his upgrade to the time he received it.  Transcript, 56 (referencing Administrative Record, 1141-76).

Plaintiff also avers that the evaluation accompanying his notice of upgrade to GS-14 effective June 4, 2000 indicates that he was performing substantially similar work to his female comparators as each comparator's total point "score" at the time of her respective upgrade was less than Plaintiff's on the date he was reclassified as GS-14.  Motion for Partial Summary Judgment, 14.  This assertion is bolstered by Plaintiff's affirmation during oral argument that a comparison between his 1998 self-assessment and the form requesting an upgrade from GS-13 to GS-14 that was submitted and ultimately approved in 2000 "indicates that there could never have been any substantial change between [19]98 and 2000."  Id. at 38 (referencing Administrative Record, 490-500).  Further, Plaintiff argues that any minor discrepancy between him and his female comparators with regard to the categories utilized to determine if an upgrade in pay is warranted can be reconciled because Plaintiff was supervising more contract employees than his comparators.  Id. at 70.

Defendant argues that Plaintiff has failed to establish that he performed "equal work" because  "the Columbia office has never had as many open cases or as many outbased locations as the [VR&C] offices in either Atlanta, Chicago, or Los Angeles."  Response to Motion for Partial Summary Judgment, 11.  In support, Defendant provides a four page exhibit attached to his Response that details criteria allegedly utilized by the Department of Veteran's Affairs to evaluate VR&C positions for upgrade from GS-13 to GS-14 during the time period when Plaintiff first requested his upgrade.  See id. at Defendant's Exhibit 01 ("Exhibit 01 ").  Exhibit 01 purports to be a copy of a letter notifying a female VR&C Officer in Chicago, a VA employee identified as a

comparator by Plaintiff, of an upgrade from GS-13 to GS-14.  Id.  The letter is addressed to a VA

official in Michigan and was allegedly sent by Ventris Gibson ("Gibson"), a Director in the VA's

Office of Human Resources.  Administrative Record, 912.  The VA Official in Michigan allegedly

received the letter on or about May 12, 1997.  Id.  The letter states that the VA "is pleased to inform

[the VA Official] that the position of [VR&C Officer] located in the [VA Office in] Chicago, Illinois

has been updated to the GS-14 level, based on an accretion of duties."  Id.  The letter also states that

"[t]he GS-14 grade level determination is based on a comprehensive study of the VR&C Officer

position nationwide . . . [and that the VA] classified the redescribed position description and

enclosed a copy . . . ."  Id.

Attached to the letter is a three page document that purports to be the "enclosed" position

redescription referenced in the letter.  Id.  The first page of this attached document is a short

memorandum entitled "Proposed Criteria for Promotion of Vocational Rehabilitation and

Counseling (VR&C) Officers to the GS-14 Level."  Id.  This "Proposed Criteria" would require a

VR&C Officer to be promoted to the GS-14 level if he or she met "no less than two" of the listed

criteria.[7]  Attached to the "Proposed Criteria" are two pages of charts, the first of which is stamped

"DRAFT," listing data corresponding to the "proposed" criteria respective to numerous cities in

which VR&C Officers are located.  Id.  These charts appear to rank VR&C Officers by the

categories outlined in the criteria for upgrade and note their respective pay grades, GS-13 or GS-14,

depending on satisfaction of the requirements noted in the memorandum.  Id.  Defendant argues that

---

[7]

According to the "Proposed Criteria" attached to the May 12, 1997 letter, the proposed criteria
includes, "a. Supervision of 19 or More staff . . . "; "b.  The number of veterans in open case status
exceeds 1600 . . ."; and "c. Supervision of three or more outbased locations."  Administrative
Record, 920.

the charts indicate the national application of this criteria to all VR&C Officer positions.  Id. at 11.

Further, because the chart indicates that the Columbia office failed to qualify for the GS-14 level

while Atlanta, Chicago, and Los Angeles did, Defendant argues that "Plaintiff never performed

equal work to Atlanta, Chicago, or Los Angeles . . . ."  Id. at 11.

   Plaintiff responds by arguing that the Chicago VR&C Officer was reclassified "not pursuant

to any 'Proposed Criteria,' but instead pursuant to a classification review . . . consisting of the

application of GSSG criteria to the Position Description."   Reply to Response to Motion for

Summary Judgment, 5.  Plaintiff also alleges that the "Defendant crafted 'Exhibit 01' so that the

'Proposed Criteria' appeared to be 'attachments' to a May 12, 1997 letter . . . ."  Id. at 3-4.  Plaintiff

asserts that "Defendant's 'Exhibit 01' consists of 4 pages that do not appear in the administrative

record in the form or order in which Defendant presents them to [the] Court."  Id. at 3 n.5.  Plaintiff

also notes that Defendant's Exhibit 01 omits several pages and avers that the "enclosure" to the

Chicago letter can be found on "the actual pages in the record, bearing USA Nos. 912-22 . . . ."  Id.

   Like Exhibit 01, the letter from Gibson in the administrative record indicates that it is

accompanied by enclosures.  Id.  However, the administrative record reflects the enclosures to be

several pages of documents indicating that the Chicago VR&C position was re-evaluated utilizing

the six-factor criteria ultimately used to upgrade Plaintiff to GS-14 in 2000.  Id. at 913-19.

Following these pages containing the six-factor analysis is the short memorandum entitled

"Proposed Criteria for the Promotion of [VR&C] Officers to the GS-14 Level."  Id. at 920.  This

memorandum is identical to the memorandum in Exhibit 01 and is followed by the same charts as

the memorandum in Exhibit 01.  Id. at 921-22.

12

The overwhelming evidence in the record indicates that Exhibit 01 omits the critical pages indicating that the Chicago official was upgraded without regard for the three-factors relied on by Defendant. Exhibit 01 lacks Bates stamp numbers[8] and omits the pages reflecting that the Chicago VR&C Officer was reclassified to the GS-14 pay grade based upon the six-factor review.[9] Further, the May 12, 1997 letter indicates that the Chicago office was upgraded "based on an *accretion of duties*." Id. at 913 (emphasis added). Following this letter in the administrative record is a page tabulating the numerical results of a review of the Chicago position that resulted in its upgrade from GS-13 to GS-14 headed by the title, "Redescribed Position Based on *Accretion of Duties*." Id. at 919 (emphasis added). This parallel is more than mere coincidence. The record reveals that the three-factor criteria identified by Defendant is entitled as merely "proposed." Id. at 920. There is no support in the record for the contention that the three factor criteria were utilized to upgrade any VR&C Officers from GS-13 to GS-14. The "Proposed Criteria" is never referenced in the documentation accompanying the upgrade notices of Plaintiff's Los Angeles and Atlanta comparators. Id. at 894-909; 962-78. Further, the two pages of charts Defendant references as "proof" that Plaintiff failed to engage in equal work as his comparators cites data compiled in 1995, several years prior to the dates in question in the underlying action. Id. at 921-22.

---

[8]

The lengthy administrative record contains numerous documents marked with Bates stamp numbers 1- 1500. The volume of the record containing deposition testimony is separately numbered.

[9]

Exhibit 01 also appears to have handwritten numbers in the top right hand corner. The number on the letter from Ms. Gibson is "2." Government's Exhibit 1, 1. The number on the three-factor memorandum is "10" while the accompanying charts are numbered, respectively, "11" and "12." Id. at 2-4.

The difference between these exhibits is significant to the disposition of the underlying motion. Defendant's Exhibit 01 paints an entirely different picture of the Chicago upgrade than the identical correspondence included in the administrative record. Defendant's representation of the May 12, 1997 letter would lead the court to believe that the enclosures documenting why the VR&C position in Chicago was reclassified to GS-14 consisted only of the memo outlining the three factors for upgrade and the corresponding charts.

At the hearing on March 23, 2006, the court asked Defendant to explain the apparent discrepancies between the administrative record and Defendant's Exhibit 01. Counsel for Defendant first attempted to offer the testimony of Carl Hawkins, a Veteran's Affairs supervisor, to explain the use of the May 12, 1997 criteria. Transcript, 16. When the court denied this request,[10] Defendant

---

[10]

Oral testimony on summary judgment motions is generally disfavored and "should be used sparingly and with great care." Seamons v. Snow, 206 F.3d 1021, 1026 (10th Cir. 2000). The court was justified in refusing to admit the testimony of Mr. Hawkins as the record in this case is well developed and contains several volumes of administrative record and deposition testimony, including a complete deposition of Mr. Hawkins. Further, there is no indication that Mr. Hawkins had personal knowledge of the alleged May 12, 1997 letter contained in Exhibit 01. Live testimony by Mr. Hawkins would be analogous to a deposition or sworn affidavit. Rule 56(c) of the Federal Rules of Civil Procedure mandates that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," must show a disputed factual issue exists in the case. Fed. R. Civ. P. 56(c). "This evidence must be based on personal knowledge and must set forth admissible facts." Reynolds and Reynolds Co. v. Hardee, 932 F. Supp. 149, 153 (E.D. Va. 1996). "To be admissible, a document must be authenticated by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" Lumoa v. Potter, 351 F. Supp. 2d 426, 430 -31 (M.D.N.C. 2004) (quoting Fed. R. Evid. 901(a)). "It is not enough for a witness to tell all [he] knows; [he] must know all [he] tells." Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1028 (9th Cir. 2001). In the instant matter, Mr. Hawkins was deposed during an administrative proceeding and made no mention of the letter containing the May 12, 1997 criteria. See Deposition of Hawkins taken May 15, 2001. Thus, while Defendant may have wanted Mr. Hawkins to speak about the purported criteria in the May 12, 1997 letter at the March 23, 2006 hearing, there is no indication that Mr. Hawkins read the letter or had any knowledge or understanding of its contents sufficient to indicate that he had the requisite personal knowledge to do so. Further, though it was averred at oral argument that Mr. Hawkins somehow "received the four pages which are marked as . . . Exhibit 01 . . . [a]nd . . . had [it] in his file," Transcript, 18, the

14

argued that "[the May 12, 1997 criteria] were proposed, but [were] used by the agency between 1997 and 1999." Id.  The court then inquired of Defendant's counsel why Defendant's exhibit "leaves out what was attached to [the May 12, 1997 letter]" and expressed concern that "[w]hat the government has attached to the letter is not what was actually attached to the letter." Id. at 17. Counsel for Defendant again attempted, unsuccessfully, to present live testimony of Mr. Hawkins to clarify the apparent discrepancy.  Id.  Counsel then stated that "Exhibit 01 was sent out nationwide to all the directors . . . [and was received by] Mr. Hawkins." Id. at 18.  Defendant provided no further explanation for the discrepancy.[11]  Thus, after a thorough review of the record, the court is constrained to find that, contrary to Defendant's representations, the May 12, 1997 letter

---

record is devoid of any such indication.  Further, since there can be no contention that Mr. Hawkins drafted the letter, was a custodian of such records, or ever utilized the information contained in the letter, any testimony regarding the letter would have great difficulty overcoming the patent hearsay contained therein.  See Fed. R. Evid. 801, 803.

[11]

In support of their motion to strike and for sanctions, Plaintiff notes that Exhibit 01 was not, as counsel for Defendant argued at the hearing, in "[Hawkins'] personal file.  Plaintiff's Reply to Defendant's Response to Motion to Strike and for Sanctions, 8. In response, counsel for Defendant significantly modifies the argument that Exhibit 01 came from the personal file of Mr. Hawkins. Surreply to Plaintiff's Motion to Strike and for Sanctions, 6.  Defense Counsel states that "[i]t simply makes no difference whether [Exhibit 01] was in Hawkins' personal file . . . ." Id. at 7. Defendant states that Hawkins' "personal file" was not "started" until "after the filing of [Plaintiff's] EEO complaint."  Id. at 6.  Counsel avers that Exhibit 01 would not have been sent to Hawkins but would instead have been mailed to Mr. Steadman Sloan, Plaintiff's supervisor at the time Exhibit 01 was allegedly generated in 1997.  Id. Counsel also claims that "counsel for the United States and [Plaintiff] were both fully aware that Hawkins was not the director until October 1998 . . . [and that] [i]t is clear that counsel also used 'Hawkins' meaning 'Hawkins' and 'director'" Id. at n.3 (citing Transcript of Hearing, 20).  The court notes that this untimely argument fails to cure the discrepancies between Exhibit 01 and the administrative record.  A review of the deposition of Mr. Sloan makes no mention of Exhibit 01 and states only that, at the time Plaintiff first sought an upgrade to GS-14, Mr. Sloan "thought the job was properly graded [at GS-13] based on the number of his staff and also the division chiefs of his operation in other offices of equal size."  Deposition of Steadman Sloan, 12.

included a seven page evaluation of the VR&C Officer position based upon six factors.[12]  See Administrative Record, 912-22.

The discrepancies between the administrative record and Exhibit 01 are fatal to Defendant's argument that a question of material fact exists as to the question of "equal work."  The court cannot simply give credit to Defendant's argument based on proposed criteria that are "merely a part of the brief and [have] not been otherwise verified or supported."  10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005).  The purported May 12, 1997 criteria in the form presented in Exhibit 01 are wholly absent from the lengthy administrative record in this case.  Defendant has provided the court with no reference to deposition testimony, affidavits, pleadings, answers to interrogatories, or other admissions on file indicating that Exhibit 01 is authentic.  While the three-factor criteria offered by Defendant as proof that Plaintiff did not perform equal work is attached to the letter, the record does not contain the three-factor criteria in the form presented by Defendant.  There is no indication on the record that these criteria played any role in the decision to upgrade the Chicago VR&C Officer.  There is also no record that the "three-factor" criteria outlined in Exhibit 01 were utilized to upgrade the Los Angeles or Atlanta comparators.  Further, the record is devoid of reference to the three-factor criteria and the role they played in the refusal to upgrade Plaintiff to GS-14 status.  Defendant's response

---

[12]

Further, Local Civil Rule 7.05(A)(5) instructs: "When a memorandum opposes a motion for summary judgment, a concise statement of the material facts in dispute shall be set forth *with reference to the location in the record*."  Local Civil Rule 7.05(A)(5) (Emphasis added). Defendant's memorandum in opposition to Plaintiff's motion and all argument addressing the issue of "equal work" fails to reference the administrative record and thus runs afoul of this well-established local rule.

to Plaintiff's motion fails to generate a question of material fact because the record does not support a finding that the proposed criteria were utilized to review VR&C officer upgrades.

Moreover, the "Proposed Criteria" are not probative of the issue of whether Plaintiff performed equal work to his female comparators. As noted, equal work does not require identical work, merely that the jobs are "substantially equal." Hassman, 790 F. Supp. at 567. Presenting the court with charts indicating that Plaintiff's place of work differed in three selected categories from his identified comparators does not automatically generate a question of fact as to whether Plaintiff was performing "substantially similar" work to his identified comparators unless there is some support in the record that these categories actually reflect "differing or additional tasks requir[ing] greater skill or responsibility." Id. Accordingly, the court finds that Plaintiff has established a prima facie case under the Equal Pay Act.

Once a plaintiff has established a prima facie case of sex-based salary discrimination, "the burden shifts to the defendant *to prove* that the difference in salary is justified by one or more of the four statutory exemptions." Equal Employment Opportunity Commission v. Aetna Insurance Co., 616 F.2d 719, 724 (4th Cir. 1980). These statutory exemptions are "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Defendant states that it has established that any alleged failure to raise Plaintiff's salary to that of his identified comparators was based on a factor other than Plaintiff's sex or, in the alternative, was based on a "bona fide merit system." Response to Plaintiff's Motion for Partial Summary Judgment, 13-14. However, Defendant relies on the "three factor" criteria rejected by the court in support of his "factor other than sex" and "bona fide merit system" arguments. The

17

establishment of both affirmative defenses relies exclusively upon Exhibit 01. The court has already addressed this exhibit and reiterates its ruling articulated hereinabove. Absent "a pleading, deposition, an answer to an interrogatory, an admission on file, or an affidavit," Defendant provides only unsupported  argument in opposition to Plaintiff's prima facie case and fails to generate a question of material fact. <u>See</u> Fed. R. Civ. P. 56(c). The court is left with no alternative but to rule that Defendant has failed to provide even a mere scintilla of evidence that the failure to pay Plaintiff at the level of his female comparators was justified by the enumerated exemptions articulated in 29 U.S.C. § 206(d)(1).

Moreover, Defendant's arguments that the alleged May 12, 1997 criteria represented a "factor other than sex" or a "bona fide merit system" justifying the disparate pay rates fails even if the court were to consider Exhibit 01. The mere existence of a merit system is insufficient to establish a defense under the Equal Pay Act absent proof that the merit system was fairly applied and actually justified the disparate pay scales. <u>See</u> <u>Strag v. Board of Trustees</u>, 55 F.3d 943, 951 (4th Cir. 1995) (recognizing the importance of evidence applying existing merit system to plaintiff's specific case); <u>Keziah v. W.M. Brown & Son, Inc.</u>, 888 F.2d 322, 325 (4th Cir. 1989) (applying facts from the record to a separate affirmative defense under the Equal Pay Act).

Defendant claims that "the [May 12, 1997 criteria] were evenly applied" and that "those [VR&C] officers who met the criteria, both male and female, were upgraded." Defendant's Memorandum in Opposition to Partial Summary Judgment, 14. In support of this contention, Defendant cites to attached exhibits documenting the upgrades of a male VR&C officer in Nashville and the female comparator VR&C officer in Atlanta. <u>Id.</u> at n.39. However, a review of these documents reveals that neither references the May 12, 1997 criteria as justification for the respective

18

upgrades.  See Id. at Exhibit 3 (Nashville Upgrade);[13] Administrative Record, 894-909 (Atlanta Upgrade).  Indeed, aside from the instant argument involving the Chicago comparator, the upgrades of Plaintiff's other comparators make no mention of the purported May 12, 1997 criteria.

Defendant also argues that the May 12, 1997 criteria were "re-evaluated . . . in 1999 " and that the standards were "modified."  Defendant's Memorandum in Opposition to Partial Summary Judgment, 14.  The record supports the contention that a letter was disseminated to regional officers on or about August 4, 1999 addressing "Classification and Recruitment Guidance for [VR&C] Officer Positions."  Administrative Record, 998-1007.  However, these revised criteria make no mention of the purported May 12, 1997 three-factor criteria and instead note that "this guidance is not intended to conflict with OPM or VA classification guidance."  Id. at 999.

The August 4, 1999 letter references the six-factor criteria that the record indicates was utilized to evaluate Plaintiff and his identified comparators.  Yet when discussing the sixth of these factors, entitled "Factor Six- Other Conditions," the August 4, 1999 letter is void of reference to the May 12, 1997 letter offered as Exhibit 01 or the three-factor criteria purportedly adopted therein. Administrative Record, 998-999. This is significant as this factor is arguably the only one of the six categories that may reference the alleged three-factor criteria relied on by Defendant.  The August 4, 1999 letter notes that "[the sixth factor] discusses workload, which led to the establishment of the [VA] workload requirement [later described]."  Id.  However, when the letter later addresses "the standard [VA] workload criteria," there is no reference to the three factors comprising the purported

_____

[13]

The court notes that the documents describing the VR&C Officer pay upgrade in Nashville are absent from the administrative record and appear for the first time in Defendant's Response to Plaintiff's Motion for Partial Summary Judgment. Accordingly, Government's Exhibit 05 is subject to exclusion under the same rationale as Government's Exhibit 01.

criteria identified in Exhibit 01. Id. at 999. The August 4, 1999 letter provides instead that workload is determined based on the percentage of the total VA workload handled by a particular regional office. Id. Defendant's contention is without merit.

Plaintiff is entitled to judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." Singer v. Dungan , 45 F.3d 823, 827 (4th Cir. 1995) (citing Bryan v. James E. Holmes Regional Medical Ctr., 33 F.3d 1318, 1333 (11th Cir.1994)). For the reasons enumerated above, summary judgment is granted to the Plaintiff on his first cause of action.

**B. Motion to Strike and for Sanctions**[14]

On March 31, 2006, Defendant filed a "Supplemental Response to Secretary's Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment." ECF Entry 83-2, 1. The supplemental response includes a document entitled a "Declaration of Ventris Gibson," the alleged author of the May 12, 1997 Letter. Gibson contends that she "issued guidance . . . that pertained to Nationwide Upgrades of Field Vocational Rehabilitation Officers (VRO's), in 1997." Id. at 1. Gibson also avers that she determined the appropriate criteria for upgrading VRO's were "(1) that the number of employees supervised had to be at least 19; (2) that the number of cases handled by the station had to be at least 1900; and (3) that the number of outbased employees supervised had to be at least 3." Id. at 2. She claims that she "required the foregoing guidance to be applied to all VRO's nationwide who were being considered for position upgrades to the GS-14 level" and that

---

[14]

The court declines to hold a hearing on Plaintiff' Motion to Strike. See Local Civil Rule 7.08 ("Hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing.").

this "'Interim Guidance' was the official guidance . . . for upgrading VRO's until any additional guidance, if any, was issued." Id.

Plaintiff has moved the court to strike Defendant's supplemental response and the attached declaration and to impose sanctions. Plaintiff argues that the court should exclude this declaration as untimely under Local Rule 7.06 and Fed. R. Civ. P. 56(c). Motion to Strike, 2-3. The court agrees.

Local Rule 7.06 provides, in pertinent part:

> Any memorandum or response of an opposing party must be filed with the Clerk of Court within fifteen (15) days of the service of the motion . . . . If no memorandum in opposition is filed within fifteen (15) days of the date of service, the Court will decide the matter on the record and such oral argument as the movant may be permitted to offer, if any.

Local Rule 7.06. In addition, Fed. R. Civ. P. 56 (c) notes that the adverse party may serve opposing affidavits *prior to* the day of hearing." Without question, Defendant's filings are untimely.

Defendant argues that, "[a]t the hearing, the United States requested twice to supplement the record . . . [and that] [b]oth times the Court indicated that it would accept the supplemental declaration." Response to Motion to Strike and for Sanctions, 1-2 (citations to the record omitted). The court disagrees with this interpretation of the proceedings. Plaintiff accurately notes that "all defense counsel who were present at the hearing should be able to confirm that the Court's use of the terms 'all right' and 'okay' after certain of counsel's requests to have Mr. Hawkins testify or to supplement the record . . . especially in light of the pauses in conversation that are not reflected in the transcription . . . indicated only that the Court was moving on to a new topic and not that the Court was granting those requests." Id. at n.6. A review of the March 23, 2006 transcript as a whole demonstrates that the court did not grant Defendant's request to supplement the record but simply

21

acknowledged that such a request was made. Accordingly, Plaintiff's motion to strike Defendant's supplement filed March 31, 2006 is granted.[15]

Even if the court were to accept Defendant's supplement to the record, the new information has no effect on the court's evaluation of Exhibit 01 or its prior ruling granting partial summary judgment. Gibson's declaration makes no mention of Defendant's Exhibit 01. Gibson's statement refers to "Interim Guidance," id., when Exhibit 01 contains no such reference. Gibson's statement notes that the alleged "Interim Guidance" was required to "be applied with respect to all VRO's nationwide who were being considered for position upgrades to the GS-14 level." Id. However, as discussed hereinabove, there is no indication in the administrative record that the three factors outlined by Gibson in her statement were ever actually applied to Plaintiff. Thus, Gibson's statement has no effect on the court's finding regarding Exhibit 01 or on the court's ruling that summary judgment is appropriate as to Plaintiff's third cause of action.

## C. Motion to Strike Plaintiff's Jury Trial Demand

On January 6, 2006, Defendant filed a "Motion to Strike Plaintiff's Demand for a Jury Trial on Equal Pay Act Issues." ECF Entry 58-1. Plaintiff initially contended that he would be entitled to a jury trial on both of his claims under the Equal Pay Act. Complaint, 1. However, Plaintiff essentially conceded in his response to Defendant's motion that there is an absence of authority supporting his contention that he is entitled to a jury trial for his "direct" EPA claim.[16] Response

---

[15] The court delays a ruling on the Motion for Sanctions until a hearing on the subject is held.

[16] This acknowledgment was made "on the condition that Defendant not oppose the filing of the underlying motion for partial summary judgment." Response to Motion to Strike, 2. Defendant stated that he was "baffled by [the] assertion that there has been such an agreement." Response to Motion for Partial Summary Judgment, 19. Any dispute over the alleged "deal," or a ruling on the

to Motion to Strike, 2.  Plaintiff averred that trial by jury may still be appropriate for the retaliation claim under the EPA.  Id.

Title 29 U.S.C. § 216(b) provides a  private right of action under the FLSA for a "direct EPA claim" under 29 U.S.C. § 206(d) and a "retaliation claim" under 29 U.S.C. § 215 (a)(3).  There is ample authority indicating that no jury trial right exists under the Equal Pay Act for a "direct EPA claim" under 29 U.S.C. § 206(d) when the United States government is the defendant.  See, e.g., Nyman v. FDIC, 967 F. Supp 1562, 1574 (D.C.D.C. 1997); Walker v. Thomas, 678 F. Supp. 164, 166 (E.D. Mich. 1987).  Accordingly, the court concludes that no jury trial right exists against Defendant under the EPA.  Defendant's motion to strike the demand for a jury trial on the Equal Pay Act claims is granted.

---

propriety of such unsanctioned deadline extensions, is moot as Defendant fails to argue that the Motion for Partial Summary Judgment was tardy.

23

### III.  CONCLUSION

For the reasons articulated above, the court **GRANTS** Plaintiff's motion for partial summary judgment as to its first cause of action (ECF Entry 65).  The court also **GRANTS** Defendant's motion to strike Plaintiff's jury trial demand for both of his EPA claims (ECF Entry 58).  The court **GRANTS** Plaintiff's motion to strike (ECF Entry 87) and delays a ruling on the motion for sanctions until a hearing on the subject is held.  Plaintiff's third cause of action is **DISMISSED** with prejudice.[17]

**IT IS SO ORDERED.**

                                    /s/ Margaret B. Seymour
                                    Margaret B. Seymour
                                    United States District Judge

June 2, 2006
Columbia, South Carolina

---

[17] Both parties have raised arguments based on language contained in the court's Opinion and Order Adopting the Report and Recommendation of the Magistrate Judge.  See Plaintiff's Motion for Partial Summary Judgment, 12; Response to Motion to Strike and for Sanctions, 3 n.1.  In adopting the Magistrate Judge's Report and Recommendation, the court denied Defendant's motion for summary judgment and ruled that questions of material fact existed on essential elements of all claims.  Order and Opinion filed September 27, 2005, ECF Entry 40, 6.  In arguing their respective positions regarding Plaintiff's Motion for Partial Summary and Plaintiff's Motion to Strike and for Sanctions, both parties have referenced one line in the court's September 27, 2005 order indicating that the Magistrate Judge recommended to the court a finding that Plaintiff "made out a prima facie case of discrimination."  Order and Opinion, 4. The court has reviewed the order and finds that this language misstated the Magistrate Judge's recommendation.  Accordingly, contemporaneous with this order, the court issues an Amended Order and Opinion modifying that line.  The court notes that this modification has no effect on the instant proceedings or on the court's earlier ruling to adopt the Magistrate Judge's Report and Recommendation.